PETER DURFEE

*vs.*

SAMUEL N. PAVITT, Impl'd with I. P. HILL et al.

A resulting trust in favor of existing creditors of a person paying the consideration for the purchase of land, under *Sec. 8, of Chap. 43, of the Gen. Stat.* of this State, can only arise upon some deed or conveyance of the land.

Where one person purchases and pays for land under a verbal agreement, and the purchaser subsequently by a verbal agreement disposes of his interest in the same for a valuable consideration to a third person, and directs in writing the conveyance to be made to such third person, and the conveyance is made accordingly, the conveyance is not presumptively fraudulent, nor does a trust result in favor of the creditors of such original purchaser, under *Sec. 8, Chap. 43, of the Gen. Stat.* of this State.

The sufficiency of certain facts to constitute actual fraud in a conveyance of land as against creditors considered and determined.

This action was commenced in the district court for Hennepin county, and was tried before a referee whose findings of facts and decision thereon are as follows :

1. "That on the 22d day of September, 1857, Samuel H. Charlton was the owner in fee of lot No. 3, in block No. 54, in the town of Minneapolis, and that on that day said Charlton and wife executed and delivered a mortgage on said lot to Lucius Atwater, to secure the payment of $648 to said Atwater, which mortgage was duly recorded.

2. That said Atwater duly foreclosed said mortgage by advertisement, under power of sale contained in said mortgage, and upon such foreclosure, on the 18th day of August,

1860, the said Atwater became the purchaser of said lot, for the sum of $700, and then received a certificate of sale of said lot, and that proper proof of the publication of the notice of sale, and of the fact and circumstances of the sale, were recorded in the office of the register of deeds of said Hennepin county.

3. That on the 2d day of May, 1861, the defendant I. P. Hill, and his brother Francis Hill, owned jointly 558 acres of land in the State of Wisconsin; and that on that day, said I. P. Hill bargained said land to the said Lucius Atwater, for $2500, of which said Atwater paid said I. P. Hill $1000 down, and gave said I. P. Hill his (said Atwater's) notes for $800, payable in yearly payments of $100 each; that as to the remaining $700, it was agreed that in payment thereof, the said Lucius Atwater should convey to said I. P. Hill, or to whoever he should direct, the said lot 3, in block 54, at any time after the time of redemption from said foreclosure should expire, if said lot remained unredeemed; but if said lot should be redeemed from such foreclosure sale, then said Atwater was to pay said I. P. Hill the money that should be paid for such redemption; that this agreement was not in writing.

4. That said Francis Hill knew of said bargain, and assented to the said I. P. Hill receiving the consideration; that Francis Hill took no part in the negotiations with said Atwater, who traded with I. P. Hill as though he was the sole owner of the Wisconsin land.

5. That the reason why said lot 3, in block 54, in Minneapolis, was not then conveyed by said Lucius Atwater to said I. P. Hill, was because the title thereto had not become perfected in said Lucius Atwater, it being then subject to redemption from said foreclosure sale; and that there was not then, nor ever, any intention on the part of the said At-

water to keep said property cloaked or covered from any creditor of said I. P. Hill; that said Atwater had no knowledge that said I. P. Hill was in embarrassed circumstances, and that the transaction, on his part at least, was in perfect good faith, and without any idea of defrauding any one.

6. That said I. P. Hill was in fact, on said 2d day of May, 1861, insolvent, and was then indebted to the plaintiff, and has ever since continued to be insolvent.

7. That on the 12th day of May, 1862, plaintiff commenced an action against I. P. Hill in this court, by filing his complaint and issuing a summons ; that said summons was not signed by plaintiff's attorney, but had the name of the plaintiff's attorney printed thereon in place of his signature; that said summons was served by leaving a copy thereof at the last usual place of abode of said I. P. Hill, in the hands of his wife, to be delivered to him ; that said I. P. Hill never appeared in said action in any manner, and that on the 7th day of June, 1862, the plaintiff, upon making due proof of the service of said summons, and of the default of the defendant, and having filed the requisite bond, caused judgment to be entered up in this Court, by the Clerk thereof, in favor of said plaintiff, and against said I. P. Hill, for $1431.34-100; that execution was issued on the same day, and that there was collected thereon, to apply on said judgment, $382.25-100, and that there is now unpaid on said judgment $1049.09-100, with interest from date of said judgment; that said judgment has never been reversed nor set aside.

8. That said lot No. 3 was never redeemed from said foreclosure sale, and that the time of redemption expired, and the title to said lot became perfect in said Lucius Atwater, on the 18th day of August, 1861.

Durfee v. Pavitt et al.

9. That during the pendency of the action on which said judgment against I. P. Hill was recovered, one Lucius A. Babcock, nephew of said Atwater, applied to said I. P. Hill for authority to sell said lot No. 3, for said I. P. Hill's benefit, and that said I. P. Hill authorized said Babcock to sell said lot, and gave said Babcock a writing directing the said Lucius Atwater to convey said lot 3 to whomsoever said Babcock should direct; that said Babcock then had knowledge of the plaintiff's claim, and that plaintiff had commenced suit to recover it, and that he had made an unsuccessful attempt to secure it by garnishment.

10. That said Babcock bargained said lot 3 to the defendant Samuel N. Pavitt for $200, and on the 9th day of July, 1862, procured a conveyance of said lot by deed from said Atwater and wife to said Pavitt, by producing said writing from said I. P. Hill; that said Babcock delivered said deed to said Pavitt, and that on such delivery the said Pavitt paid said Babcock $200, the consideration before agreed upon; that from all that appears, said sum of $200 was at that time an adequate consideration for said lot; that said deed to Pavitt was duly recorded July 19, 1862.

11. There is no evidence in the case tending to show that at the time of this conveyance, said Pavitt knew that said Babcock was acting in behalf of I. P. Hill, or that Hill was in any way connected with the title to said lot; nor that he knew anything about the plaintiff's debt, or the circumstances of I. P. Hill. On the other hand, there is no evidence tending to show that said Pavitt was not fully informed of all these matters. I find, however, that said Hill and Pavitt were not at that time PERSONALLY acquainted.

12. That said Babcock never paid over to said I. P. Hill the consideration received by him of said Pavitt, nor any part thereof.

13. That neither said Atwater, nor said I. P. Hill occupied, nor exercised any acts of ownership, or use, over said lot No. 3.

14. That said Pavitt has used and occupied the same since said conveyance to him as owner.

*Decision.*—This action is brought under §§ 7 *and* 8, *of Ch.* 43, *of Gen. Stats., page* 341, and it seems clear to me that in proceedings on behalf of judgment creditors under that statute, relief must be sought in a separate action, and not by supplementary proceedings in the action in which the judgment was obtained. The reasoning in *Garfield vs. Hatmaker*, 15 *N. Y. Rep.*, 475, is irrefutable, and to my mind settles that question, notwithstanding some dicta in *North vs. Bradway*, 9 *Minn.*, 189, which seems to conflict.

The plaintiff's judgment against I. P. Hill, being rendered in a domestic court of general jurisdiction, is valid until set aside or reversed. The jurisdiction of such a court cannot be called in question, collaterally. *Kipp vs. Fullerton*, 4 *Minn.*, 473 ; 2 *Am. Lead. Cases (4th ed.)*, 808 *et seq.*

This brings me to the consideration of the main question in the case. Did a trust in favor of the creditors of I. P. Hill arise either out of the bargain with Atwater, or the conveyance to Pavitt ? I must answer this question in both its respects, in the negative. No trust resulted out of the bargain with Atwater, because that bargain did not change the title to the lot at all. It did not amount to a " grant," or " conveyance," and therefore would not sustain this statutory trust. Atwater, therefore, never became a trustee for Hill's creditors. This eliminates from the case the question of Pavitt's rights or liabilities, as purchaser from a prior trustee. But the deed to Pavitt was delivered, not on the old consideration, coming from Hill, but upon the consideration of $200 paid by Pavitt. Had this latter consid-

eration not been paid, it is obvious that this particular conveyance would not have been made, nor any conveyance to Pavitt; although Atwater was ready to convey to Hill, or on his order. I think the facts bring the case fairly within the reasoning of the court in *Jackson ex. dem. Seelys vs. Morse,* 16 *Johns.,* 197.

The defendant, Samuel N. Pavitt, is entitled to judgment against the plaintiff, for his costs and disbursements."

Judgment was entered pursuant to the decision of the referee, and the plaintiff appeals to this court.

L. M. Stewart for Appellant.

F. Beebe for Respondent.

*By the Court.*—McMillan, J.—The principal points of inquiry in this case are:

1. Whether the deed from Atwater to Pavitt was presumptively fraudulent, and whether for want of evidence on the part of Pavitt disproving a fraudulent intent, a trust resulted to the creditor of Hill, under our statute.

2. Whether the deed was fraudulent and void as against the plaintiff, as creditor of Hill, for actual fraud in the conveyance. Some other incidental questions will be considered as we proceed in the case.

It is a well settled doctrine under the statute of frauds, that where one man buys land and pays for it with his own money, and takes a conveyance in the name of another, a trust results by operation of law in favor of the person so paying the purchase money. *Sugden on Vendors,* 255.

It is also determined by the weight of authority that the trust in such case need not appear on the face of the deed,

but that such trust can be established or rebutted by parol evidence, in that case however the evidence must be clear and satisfactory. *Boyd vs. McLean,* 1 *Johns. Ch.* 582 ; *Page vs. Page,* 8 *N. H.* 195 ; 3 *Sug. on Vend.,* 256 *and* 7, *and authorities cited in n.* 1. We are clearly of opinion also that "It is essential from the very words of the statute, to a resulting trust, that it should arise from some conveyance or deed." *Stat* 29, *Car.* 2, *Ch.* 3, *Secs.* 7–8 ; *Brown on Frauds,* 512 (*app.*) ; *Jackson vs. Seelye,* 16 *Johns.* 197 ; *Page vs. Page,* 8 *N. H.* 195. In our State the rule as to resulting trusts under the English statute has been greatly modified. It is enacted by our statute that "When a grant for a valuable consideration is made to one person, and the consideration therefor is paid by another, no use or trust shall result in favor of the person by whom such payment is made ; but the title shall vest in the person named as the alienee in such conveyance, subject only to the provision of the next section," which is in the following language : "Every such conveyance shall be presumed fraudulent as against the creditors, at that time, of the person paying the consideration ; and when a fraudulent intent is not disproved, a trust shall result in favor of such creditors, to the extent that may be necessary to satisfy their just demands." *Gen. Stat., Ch.* 43 *Secs.* 7–8. There are also further limitations of section 7 which are not necessary to be considered in this case. It will be perceived that while the trust in favor of the person paying the consideration money is abolished, and a trust in favor of the existing creditors of such person is expressly preserved, and the conveyance as to such creditors declared to be presumptively fraudulent, by our statute, the statute only embraces trusts resulting upon a conveyance. It is therefore essential to the existence of a resulting trust, in favor of the existing creditors

of the person paying the consideration, under our statute, that it arise from some conveyance or deed. No such trust therefore could have arisen in favor of Hill's creditors in this instance until the conveyance from Atwater to Pavitt.

To bring this case within the statute therefore, the consideration of the conveyance to Pavitt must have been paid by Hill.

The referee finds, among other things, that Atwater verbally agreed with Hill to sell and convey the premises to him, or to such person as he should direct, and that Hill paid him the purchase money, at the time of making the agreement; that the title to the premises became perfect in Atwater on the 18th of August, 1861; that afterwards, and during the pendency of the action, commenced on the 12th of May, 1862, in which the judgment in favor of the plaintiff, Durfee, was recovered against Hill—no conveyance having ever been executed by Atwater—" One Lucius A. Babcock, nephew of said Atwater, applied to said I. P. Hill for authority to sell said lot No. 3, for said I. P. Hill's benefit, and that said I. P. Hill authorized said Babcock to sell said lot, and gave said Babcock a writing directing the said Lucius Atwater to convey said lot 3, to whomsoever said Babcock should direct. * * * *
That said Babcock bargained said lot to the defendant, Samuel N. Pavitt, for $200, and on the 9th of July, 1862, procured a conveyance of said lot, by deed, from said Atwater and wife to said Pavitt, by producing said writing from said I. P. Hill; that said Babcock delivered said deed to said Pavitt, and that on such delivery the said Pavitt paid said Babcock $200, the consideration before agreed upon; that there is no evidence tending to show that at the time of this conveyance said Pavitt knew that said Babcock was acting in behalf of I. P. Hill, or that Hill was in any way

connected with the title to said lot.    *    *    *    *    *    *
On the other hand, there is no evidence tending to show
that said Pavitt was not fully informed of all these matters."
The facts found by the referee show that Babcock was in
fact the agent of Hill, and acted as such in the sale to Pa-
vitt. The presumption under such circumstances is that the
authority under which Babcock acted was communicated to
Pavitt. So far, therefore, as the referee finds that there is
no evidence in the case tending to show, that at the time of
this conveyance, Pavitt knew that Babcock was acting on
behalf of Hill, or that Hill was in any way connected with
the title to the lot, the finding is erroneous. But on the
contrary, as the case stands, we must presume that Pavitt
knew of Babcock's agency for Hill, and of Hill's interest
under the agreement with Atwater, and that in the trans-
action Babcock was disposing of Hill's interest for the bene-
fit of the latter. The facts, then, so far as it is necessary to
advert to them in order to ascertain whether the considera-
tion of the deed to Pavitt was paid by Hill, so as to render
the conveyance presumptively fraudulent as to Hill's exist-
ing creditors, within the meaning of our statute of "Uses
and Trusts," are these : Atwater made a verbal contract
with Hill for the sale of the lot, and agreed to convey the
same to him or to such person as he should direct, in con-
sideration of $700 which Hill paid at the time. Subse-
quently, and before any conveyance by Atwater, Hill,
through his agent Babcock, in consideration of $200, paid
by Pavitt, transferred to the latter, by a verbal agreement,
all Hill's interest under the agreement with Atwater ; there-
upon, on the written order of Hill, Atwater conveyed the
lot to Pavitt.

Upon this state of facts, the case, so far as the questions
of a resulting trust in favor of Hill's creditors, and the pre-

sumptively fraudulent character of the deed, are concerned, is not distinguishable in principle from that of *Jackson vs. Seeley*, 16 *Johns.*, 196. Although Atwater gave the deed on the consideration originally paid by Hill, yet as between Hill and Pavitt, by the agreement between them, through Babcock, Hill's agent, Hill parted with all his interest in the payment by him, and all his rights under the contract, and transferred the same to Pavitt in consideration of $200 paid by the latter. Pavitt, therefore, both as to Hill and Atwater, stood in Hill's place, as an assignee for value of Hill's interest. This in effect rendered the payment by Hill to Atwater, a payment by Pavitt to Atwater, and the deed having been made upon this consideration, Pavitt is a purchaser for value. Under this state of facts no trust would have resulted to Hill under the statute of frauds, and under our statute the deed was not presumptively fraudulent; it was not therefore incumbent on the defendant Pavitt, in the first instance, to disprove a fraudulent intent, in order to prevent a resulting trust in favor of Hill's existing creditors.

2. Was the deed to Pavitt void as to the plaintiff, a creditor of Hill, for actual fraud in the conveyance? In order successfully to invoke the aid of a court of equity on this ground, to subject the land in the hands of Pavitt, a purchaser for value, to the payment of the plaintiff's judgment, it is necessary for the plaintiff to establish a fraud on the part of Hill, in which Pavitt participated, or of which he had notice prior to or at the time of the conveyance to him.

The referee finds that Atwater, so far as he was concerned, acted in entire good faith in the premises, and had no notice of any fraudulent intention on the part of Hill in the transaction, and there is sufficient evidence to sustain

this finding. But it was not necessary to the plaintiff's case to implicate Atwater in the fraud. If fraud existed on the part of Hill of which Pavitt had notice, that would be sufficient for the plaintiff. Hill's fraud was therefore a distinct issue in the case, upon this issue the referee makes no finding, which he should have done. We think the referee erred in sustaining the objection to the question put to the defendant Hill by the plaintiff's counsel, "Why did you not have the conveyance of the property made to you at the time the bargain was made?" And in finally rejecting the answer of Hill to the question, which was taken subject to the objection; for the evidence offered went directly to establish fraud on the part of Hill. But in the view we take of the case, neither the rejection of the testimony offered, nor the omission of the referee to find upon the question of Hill's fraud, is sufficient to require us to grant a new trial, for, independent of the fact that subsequent testimony in the case shows the fraudulent intent of Hill, and assuming the existence of fraud on the part of Hill, as against the appellant, it could have no material influence on the result, unless Pavitt participated therein, or had notice of it. We do not think there is any evidence—and the evidence is all before us—tending to prove either of these facts. The burden of proof under this issue was upon the plaintiff. The agreement between Atwater and Hill being a mere verbal one, and Hill not having made any improvements on the premises, or entered into possession thereof in pursuance of it, would not, while resting in parol, vest in Hill any interest in the premises either in law or equity. The only right Hill would have in such case, would be to the money paid by him to Atwater, and the creditors of Hill, by taking the proper steps in time, could have reached this interest; but clearly Hill had no interest either in the

land or purchase money, upon which the judgment of the plaintiff was a lien. Whatever may have been the effect of the performance of the agreement by Atwater, as between the parties to the agreement, or their privies, Hill having disposed of his interest to Pavitt for a valuable consideration prior to such performance, it did not give to the plaintiff, Hill's judgment creditor, who was neither a party nor privy to the agreement, any greater right as against Pavitt, than that which accrued to him under the oral agreement.

The plaintiff's judgment therefore was not constructive notice to Pavitt at or before the time of his purchase.

We discover no evidence tending to show that Pavitt, at or before the conveyance to him, had any notice in fact of the existence of the plaintiff's judgment, or of Hill's insolvency, or of any indebtedness of Hill to the plaintiff, or any other person ; or that Pavitt was aware of any of the circumstances attending the attempt of the plaintiff to collect his judgment against Hill, or that there was any communication or intimation to Pavitt of the intention of Hill or Babcock to hinder, delay, or defraud the plaintiff, or any one else, by the conveyance to Pavitt. It is true the presumption from the facts is that Pavitt knew the legal title to the lot was in Atwater, and was aware of Hill's agreement with Atwater for the purchase of the lot, but circumstances of this character are of frequent occurrence, and there is nothing in them, *per se*, which indicates fraud, or is at all inconsistent with perfect integrity. The fact that the consideration of Hill's agreement with Atwater for the lot was $700, and that Pavitt paid Hill but $200, cannot be regarded either as notice to Pavitt of fraud in Hill, or as a badge of fraud in Pavitt, for Pavitt's agreement was made more than a year after Hill's contract with Atwater, and no evidence was offered as to the value of the lot at the time of Pavitt's pur-

chase.   The referee finds that $200, the sum paid by Pavitt for the premises, was, at the time he purchased, an adequate consideration.    If the plaintiff relied on the inadequacy of the consideration, it was incumbent on him to show the fact, and having offered no evidence upon the point, the finding of the referee is correct.   In addition to this, referring to the pleadings, we find in the complaint of the plaintiff the allegation, " that said premises, including the house thereon, are not worth more than $800," and in the answer of the defendant Pavitt, it is averred that the sum of $200, for which he purchased, was, at that time, a full and fair consideration for the premises; that at that time the premises were unoccupied and unimproved; that prior to the commencement of this action he placed improvements thereon, to-wit, a dwelling house, and fenced and inclosed the same, and that the improvements were reasonably worth $550. The plaintiff, in his reply, denies that Pavitt put $500 improvements on the premises, or any improvents *before he had full notice of the plaintiff's claim,* but avers that he put all the " said improvements on the premises, " with full knowledge of the plaintiff's claim.   This is an admission of the improvements and their value, and an averment that they were put on with notice of the plaintiff's claim.   This is a substantial admission of the adequacy of the price paid by Pavitt at the time he purchased.

There is an entire absence of evidence to establish fraud in Pavitt, or bring to him any notice of fraud in Hill.   Pavitt therefore is a *bona fide* purchaser for value of the premises, and the plaintiff is not entitled to the relief sought as against him.

The judgment appealed from is affirmed.