ELLEN B. LOW *vs.* ZENO P. ELWELL & wife.

Essex. November 3, 1875. October 19. — November 29, 1876.

The owner of land, who forcibly enters thereon and ejects without unnecessary force a tenant at sufferance, who has had reasonable notice to quit, is not liable to an action for an assault.

TORT for an assault in forcibly ejecting the plaintiff from her dwelling-house.

At the trial in the Superior Court, before *Brigham*, C. J., it appeared that the plaintiff was the wife of John C. Low, who had hired a house of Josiah Low, the owner thereof, under an oral lease, and had occupied the same for two years under that tenancy; and that in March, 1873, Josiah Low made a lease of the house under seal to Zeno P. Elwell, and both of them in writing gave notice to John C. Low of this lease, and to quit the premises.

The plaintiff testified that on April 15, 1873, she was occupying the house with her husband and family, consisting of her son, eleven years of age, and a hired servant, and that, while her husband was absent from home, the following events took place: "About ten o'clock in the morning, I saw a furniture wagon stop in front of the house. The doors were all fastened. Elwell and his wife came to the back door, and tried it. Mrs. Elwell came and knocked on the window and said, 'Let me in.' I said she must not cross the threshold. She said she should come in, she had a deed of the place. They went away, and I heard a noise at the front door. I was combing my hair; I opened the door into the front entry, and found the front door open, the bolt lying on the floor, and Elwell and his wife standing on the step, he having an iron bar in his hand. The door had been bolted by me before that time. I forbade their crossing the threshold, but they came in. Elwell said, 'You forbid my crossing the threshold. I own this house, and want you to go out.' I told him not to lay his hands on me. They then proceeded to take out the furniture, carpets, &c., and to bring in their own. My boy was by my side. The hired man was near me, and Elwell took him by the collar and put him out. There were six men with them in the street. They were not at the door at the time it was broken, and did not do anything except remove furniture. Mr. Josiah Low was one of them. The others were neighbors and men who had brought the defendants' furniture from Gloucester. I remained in the house, most of the time in my bedroom, until about half past two o'clock in the afternoon. All my furniture had been removed, except a box on which I was sitting. Elwell came to me and removed me by force from the box, and carried it out. Afterwards he came to me and directed me to leave the house, which I refused to do. He then took me by the shoulders

and ran me out of the house, from my bedroom, through the sitting-room, into the street. My boy followed me. Elwell said, in his wife's presence, that he was acting under her directions." It was admitted that she was jointly liable with him for whatever was done, if either was liable; and that, if they had the right to remove the plaintiff by force, at the time she was removed, no more force was used than was reasonably necessary in either instance.

The case was reported, by consent of parties, before verdict, to this court; the parties agreeing that if, upon these facts, the defendants could not justify the acts admitted to have been done by them, the case was to stand merely for an assessment of damages; if otherwise, the plaintiff should become nonsuit.

The case was argued in November 1875, and was afterwards submitted on briefs to the whole court.

*S. B. Ives, Jr. & A. L. Huntington,* for the plaintiff. In this Commonwealth, the right to expel a tenant at sufferance by force has been restricted to cases where the entry was peaceable. *Sampson* v. *Henry,* 11 Pick. 379, and 13 Pick. 36. *Mugford* v. *Richardson,* 6 Allen, 76. In *Winter* v. *Stevens,* 9 Allen, 526, the entry was peaceable, and the right to expel without unnecessary force, laid down by the court, must be considered with reference to that fact. The following cases were all actions of trespass *quare clausum fregit*: *Meader* v. *Stone,* 7 Met. 147. *Curtis* v. *Galvin,* 1 Allen, 215. *Moore* v. *Mason,* 1 Allen, 406. In *Meader* v. *Stone,* there was a count for an assault upon the plaintiff's wife, which the evidence failed to sustain, as it did not appear that the defendant knew she was in the house.

The necessity of a peaceable entry, to give the owner of premises a lawful possession, and enable him to set up a successful defence to this form of action, has been recognized in the courts of other states. *Dustin* v. *Cowdry,* 23 Vt. 631. *Stearns* v. *Sampson,* 59 Maine, 568. *Page* v. *De Puy,* 40 Ill. 506, 510. *Reeder* v. *Purdy,* 41 Ill. 279. *Larkin* v. *Avery,* 23 Conn. 304. In England, the authorities are somewhat at variance, although *Newton* v. *Harland,* 1 Man. & Gr. 644, which is an authority for the plaintiff, has never been overruled, as the language of Baron Parke in *Harvey* v. *Brydges,* 14 M. & W. 437, was entirely extrajudicial. 4 Kent Com. (12th ed.) 118, note 1, and cases cited.

A legal possession cannot be gained by a forcible entry. It is an indictable offence at common law. *Commonwealth* v. *Shattuck*, 4 Cush. 141. If a statute inflicts a penalty for doing an act, the penalty implies a prohibition, and the thing is unlawful, though there be no prohibitory words in the statute. *Bartlett* v. *Vinor*, Carth. 251. *Newton* v. *Harland*, above cited. *Bensley* v. *Bignold*, 5 B. & Ald. 335. *Miller* v. *Post*, 1 Allen, 454 A forcible entry into lands and tenements is prohibited by the Gen. Sts. c. 137, under a penalty of restitution of the premises, on a summary process, which can be maintained by one who has a bare peaceable possession without title. Taylor's Land. & Ten. (6th ed.) § 789, note 1. 4 Am. Law Rev. 429, 448. This prohibition is absolute in its nature; and the proper test to apply in every case is whether a breach of the statutory command is deprived of the protection of the law and treated as unlawful in all the other connections in which it may come before the court, as, for instance, the validity of a contract to do the act in question. It may be inferred, from the language of the court in *Fifty Associates* v. *Howland*, 5 Cush. 214, 218, that a condition in a lease for a forcible entry would be void.

*J. A. Gillis & C. A. Sayward*, for the defendants.

GRAY, C. J. A tenant holding over after the expiration of his tenancy is a mere tenant at sufferance, having no right of possession against his landlord. If the landlord forcibly enters and expels him, the landlord may be indicted for the forcible entry. But he is not liable to an action of tort for damages, either for his entry upon the premises, or for an assault in expelling the tenant, provided he uses no more force than is necessary. The tenant cannot maintain an action in the nature of trespass *quare clausum fregit*, because the title and the lawful right to the possession are in the landlord, and the tenant, as against him, has no right of occupation whatever. He cannot maintain an action, in the nature of trespass to his person, for a subsequent expulsion with no more force than necessary to accomplish the purpose; because the landlord, having obtained possession by an act which, though subject to be punished by the public as a breach of the peace, is not one of which the tenant has any right to complain, has, as against the tenant, the right of possession of the premises; and the landlord, not being

liable to the tenant in an action of tort for the principal act of entry upon the land, cannot be liable to an action for the incidental act of expulsion, which the landlord, merely because of the tenant's own unlawful resistance, has been obliged to resort to in order to make his entry effectual. To hold otherwise would enable a person, occupying land utterly without right, to keep out the lawful owner until the end of a suit by the latter to recover the possession to which he is legally entitled.

This view of the law, notwithstanding some inconsistent opinions, is in accordance with the current of recent decisions in England and in this Commonwealth.

In *Turner* v. *Meymott*, 7 Moore, 574; *S. C.* 1 Bing. 158; it was decided that a tenant whose term had expired could not maintain trespass against his landlord for forcibly breaking and entering the house in his absence. In *Hillary* v. *Gay*, 6 C. & P. 284, indeed, Lord Lyndhurst at *nisi prius*, while recognizing the authority of that decision, ruled that if the landlord, after the expiration of the tenancy, by force put the tenant's wife and furniture into the street, he was liable to an action of trespass *quare clausum fregit.* And in *Newton* v. *Harland*, 1 Man. & Gr. 644 ; *S. C.* 1 Scott N. R. 474 ; a majority of the Court of Common Pleas, overruling decisions of Baron Parke and Baron Alderson at *nisi prius*, held that under such circumstances the landlord was liable to an action of trespass for assault and battery.

But in *Harvey* v. *Brydges*, 14 M. & W. 437, Baron Parke stated his opinion, upon the point raised in *Newton* v. *Harland*, as follows : " Where a breach of the peace is committed by a freeholder, who, in order to get into possession of his land, assaults a person wrongfully holding possession of it against his will, although the freeholder may be responsible to the public in the shape of an indictment for a forcible entry, he is not liable to the other party. I cannot see how it is possible to doubt that it is a perfectly good justification to say that the plaintiff was in possession of the land against the will of the defendant, who was owner, and that he entered upon it accordingly ; even though, in so doing, a breach of the peace was committed." Baron Alderson concurred, and said that he retained the opinion that he expressed in *Newton* v. *Harland,* notwith

standing the decision of the majority of the Court of Common Pleas to the contrary. The opinion thus deliberately adhered to and positively declared by those two eminent judges, though not required by the adjudication in *Harvey* v. *Brydges*, is of much weight. In *Davis* v. *Burrell*, 10 C. B. 821, 825, Mr. Justice Cresswell said, that the doctrine of *Newton* v. *Harland* had been very much questioned. And it was finally overruled in *Blades* v. *Higgs*, 10 C. B. (N. S.) 713, where, in an action for an assault by forcibly taking the defendant's property from the plaintiff's hands, using no more force than was necessary, Chief Justice Erle, delivering the unanimous judgment of the court, approved the statement of Baron Parke, above quoted, and added : " In our opinion, all that is so said of the right of property in land applies in principle to a right of property in a chattel, and supports the present justification. If the owner was compellable by law to seek redress by action for a violation of his right of property, the remedy would be often worse than the mischief, and the law would aggravate the injury, instead of redressing it." See also *Lows* v. *Telford*, 1 App. Cas. 414, 426.

In *Commonwealth* v. *Haley*, 4 Allen, 318, the case was upon an indictment for forcible entry, and no opinion was required or expressed as to the landlord's liability to a civil action.

The judgment in *Sampson* v. *Henry*, 11 Pick. 379, turned upon a question of pleading. The declaration, which was in trespass for an assault and battery, alleged that the defendant assaulted the plaintiff, and with a deadly weapon struck him many heavy and dangerous blows. The pleas of justification merely averred that the defendant was seised and had the right of possession of a dwelling-house, that the plaintiff was unlawfully in possession thereof and forcibly opposed the defendant's entry, and that the defendant used no more force than was necessary to enable him to enter and to overcome the plaintiff's resistance ; but did not deny the use of the dangerous weapon and the degree of violence alleged in the declaration ; and were therefore held bad, in accordance with *Gregory* v. *Hill*, 8 T. R. 299, there cited. The remarks of Mr. Justice Wilde, denying the right of a party dispossessed to recover possession by force and by a breach of the peace, would, if construed by themselves, and

extended beyond the case before him, allow the tenant to maintain an action of trespass against the landlord for entering the dwelling-house, in direct opposition to the judgment delivered by the same learned judge, in another case, between the same parties, argued at the same. term and decided a year after. *Sampson* v. *Henry*, 13 Pick. 36.

In the latter case, which was an action for breaking and entering the plaintiff's close, and for an assault and battery upon him, the court held that the plea of *liberum tenementum* was a good justification of the charge of breaking and entering the house, but not of the personal assault and battery. That decision, so far as it held that the landlord was not liable to an action of trespass *quare clausum fregit* by a tenant at sufferance for a forcible entry, has been repeatedly affirmed. *Meader* v. *Stone*, 7 Met. 147. *Miner* v. *Stevens*, 1 Cush. 482, 485. *Mason* v. *Holt*, 1 Allen, 45. *Curtis* v. *Galvin*, 1 Allen, 215. *Moore* v. *Mason*, 1 Allen, 406. And, so far as it allowed the plaintiff to recover, in such an action, damages for the incidental injury to him or to his personal property, it has been overruled. *Eames* v. *Prentice*, 8 Cush. 337. *Curtis* v. *Galvin, ubi supra.*

It has also been adjudged that a landlord, who, having peaceably entered after the termination of the tenancy, proceeds, against the tenant's opposition, to take out the windows of the house, or to forcibly eject the tenant, is not liable to an action for an assault, if he uses no more force than is necessary for the purpose. *Mugford* v. *Richardson*, 6 Allen, 76. *Winter* v. *Stevens*, 9 Allen, 526. For the reasons already stated, we are all of opinion that a person who has ceased to be a tenant, or to have any lawful occupancy, has no greater right of action when the force exerted against his person is contemporaneous with the landlord's forcible entry upon the premises.

Our conclusion is supported by the American cases of the greatest weight. *Jackson* v. *Farmer*, 9 Wend. 201. *Overdeer* v. *Lewis*, 1 W. & S. 90. *Kellam* v. *Janson*, 17 Penn. St. 467. *Stearns* v. *Sampson*, 59 Maine, 568. *Sterling* v. *Warden*, 51 N. H. 217. The opposing decisions are so critically and satisfactorily examined in an elaborate article upon this subject in 4 Am. Law Rev. 429, that it would be superfluous to refer to them particularly.

The tenancy of the plaintiff's husband under an oral lease was but a tenancy at will, which, by the written lease from his land-lord to the defendant, and reasonable notice thereof, was determined, and he became a mere tenant at sufferance. *Pratt* v. *Farrar*, 10 Allen, 519. It being admitted that, if the defendants had the right to remove the plaintiffs by force, no more force was used than was reasonably necessary, this action cannot be maintained.                                   *Plaintiff nonsuit.*